IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER BURLEW,<br><br>                    Petitioner,<br><br>vs.<br><br>SCOTT FRAUENHEIM, Warden,<br>Pleasant Valley State Prison,[1]<br><br>                    Respondent. | No. 2:13-cv-02637-JKS<br><br>MEMORANDUM DECISION |

Christopher Burlew, a state prisoner represented by counsel, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  Burlew is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at Pleasant Valley State Prison.  Respondent has answered, and Burlew has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On July 29, 2009, Burlew was charged by amended information with 7 counts of lewd and lascivious acts on a child under 14 years of age, 6 counts of sexual penetration of a child 10 years of age or younger, and 1 count of sexual intercourse with a child 10 years of age or younger.  The information alleged that all crimes occurred between January 1, 2007, and September 7, 2007.  On direct appeal of his conviction, the Court of Appeal recounted the following facts underlying the information:

> The offenses in this matter occurred sometime between September 1, 2006 and September 7, 2007, when [Burlew] was at least 20 years old and the victim was under 10. During this period, [Burlew] was living in the home of his aunt, T.O., and uncle, who had

---

[1]        Scott Frauenheim, Warden, Pleasant Valley State Prison, is substituted for Dwight Neven, Warden, High Desert State Prison, Indian Springs, Nevada.  FED. R. CIV. P. 25(c).

two children, H.O. and C.O.  H.O., the victim in this matter, had her ninth birthday in November 2006, and attended the third grade between September 2006 and May 2007.

At approximately 8:00 p.m. on September 7, 2007, T.O. walked to the doorway of C.O.'s bedroom and saw C.O. sitting on the floor playing a video game and [Burlew] and H.O. sitting on a bed.  [Burlew] had his arm around H.O. and his hand on her chest.  T.O. immediately backed away and called for the children to go to the bathroom to brush their teeth and get ready for bed.  She also asked [Burlew] to drive to Blockbuster Video to rent a movie.

As soon as [Burlew] departed, T.O. asked H.O. what was going on.  H.O. answered, "With what?"  T.O. asked if [Burlew] was touching H.O., and H.O. put her head down and began crying.  T.O. insisted that H.O. tell her what was going on, and H.O. acknowledged [Burlew] was touching her.  When T.O. asked where [Burlew] had been touching her, H.O. grabbed her mother's hand and put it on her chest and her "private" area.  H.O. also indicated the touching was under her clothes.  T.O. asked if [Burlew] had ever put anything inside her, and H.O. "was crying and crying and said, 'Yes.'"  When asked what [Burlew] put inside her, H.O. said, "His wee wee."  T.O. then asked where and how this happened.  H.O. went to her bedroom and, after a minute, got on her hands and knees on top of the bed.  H.O. said [Burlew] "put his wee wee inside of her and went back and forth."  H.O. indicated this happened more than once.

T.O. woke her husband, who worked at night and slept more during the day, and they took H.O. to the U.C. Davis Medical Center.  However, an examination of H.O. was indeterminate for sexual penetration.

On September 18, 2007, H.O. was taken to the Sacramento "S.A.F.E. Center" for a one-on-one forensic interview.  However, H.O. refused to discuss the molestations during the interview.

On October 3, 2007, H.O. began attending weekly counseling with a child and family therapist.  For many months, H.O. would not discuss the molestations.

On January 31, 2008, T.O. made a pretext call to [Burlew].  During the call, [Burlew] admitted molesting H.O. but indicated the molestations did not occur over a very long period.  He also admitted placing his penis close to H.O., touching her "private" with it, and masturbating H.O.  However, he denied ever penetrating H.O. or having intercourse with her.

On March 3, 2008, during a counseling session, H.O. finally told the therapist that [Burlew] had touched her "privates" and would have her get on her hands and knees.

Three days later, H.O. was again taken to the S.A.F.E. Center for an interview.  During that interview, H.O. discussed the molestations and indicated they occurred when she was nine years old.  She also said they occurred during the day while her mother was gone and her father was asleep.  H.O. indicated [Burlew] touched her "private" but nowhere else.  She also indicated [Burlew] touched her with his fingers and then his "private."  H.O. asserted [Burlew] touched her with his fingers perhaps six times and with his "private" four to five times.  She also said [Burlew] touched her private with his private both outside and inside and, when his private was inside her, [Burlew] moved around a minute or so and pulled her to him.  H.O. also indicated [Burlew] was in front and facing her at the time.

2

*People v. Burlew*, No. C064269, 2012 WL 4748959, at *1-2 (Cal. Ct. App. Oct. 5, 2012).

On August 6, 2009, Burlew proceeded to jury trial.  The victim and her mother both testified at trial.  The victim testified that Burlew touched her "private" with his finger and with his "private" while she was in the third grade, and her mother testified that her daughter began the third grade in September 2006.  The prosecution moved to amend the starting date for the time allegation to September 2006 rather than January 2007.  Burlew objected, and the trial court postponed a ruling.

In addition to testimony from the victim and her mother, the jury heard testimony from the victim's therapist, the physician's assistant who examined the victim at U.C. Davis, and the investigating officer.  The jury also heard both the second S.A.F.E. interview and the pretext call.    The defense consisted of expert testimony that the victim's medical examination showed there had been no penetration.  Burlew did not testify.  In argument to the jury, defense counsel did not contest that Burlew touched H.O. inappropriately.

At the close of evidence, the prosecution renewed its motion to amend the information to expand the time frame of the offenses backward to September 1, 2006.  Burlew argued that the "on-or-about" standard instruction was adequate without amendment.  Over the defense's objection, the court granted the amendment to reflect the beginning date to be September 2006 rather than January 2007.

During deliberations, the jury questioned the use of the term "vagina" in the verdict forms versus the use of the term "genitalia" in the instructions and sought direction from the court as to which term applied.  The question highlighted a discrepancy between the charging document and California Penal Code § 288.7(b), which prohibits sexual penetration as defined in

§ 289.  Section 289 defines sexual penetration as "the act of causing the penetration, however slight, of the genital or anal opening of any person or causing another person to so penetrate the defendant's or another person's genital or anal opening for the purpose of sexual arousal, gratification, or abuse by any foreign object, substance, instrument, or device, or by any unknown object."  CAL. PENAL CODE § 289(k)(1).  However, at the beginning of trial, the amended information alleged for each violation of § 288.7(b) that Burlew "inserted his finger into the victim's vagina."

The prosecution proposed that the verdict forms be amended for each of the § 288.7 charges to substitute the word "genitalia" for "vagina."  The defense objected, arguing that the amendment would reduce the prosecution's burden of proof because the penetration need not be as deep to penetrate the genitalia as to penetrate the vagina.  The court gave the prosecution leave to amend the information to substitute "genitalia" for "vagina," and the verdict forms were amended accordingly.  The amendment was consistent with the jury instructions, which tracked the statutory language.   Burlew subsequently moved for a mistrial, which the trial court denied.  The court then instructed the jury that penetration means "penetration, however slight, of the labia majora of the child for the purpose of sexual arousal or gratification."

The jury was also instructed with CALCRIM No. 3550.  In relevant part, the jury was told:

> When you go to the jury deliberation room, the first thing you should do is choose a foreperson.  The foreperson should see to it that your discussions are carried on in an organized way and that everyone has a fair chance to be heard.
> It is your duty in the jury deliberation room to talk with one another and to deliberate.  You should try to agree on a verdict if you can.  Each of you must decide the case for yourself, but only after you have discussed the evidence with the other jurors.  Do not hesitate to change your mind if you become convinced that you were wrong, but do not change your mind just because other jurors disagree with you.

4

Keep an open mind and openly exchange your thoughts and ideas about this case. Stating your opinions too strongly at the beginning or immediately announcing how you plan to vote may interfere with an open discussion.  Please treat one another courteously. Your role is to be an impartial judge of the facts, not to act as an advocate for one side or the other. [¶] . . . [¶]

Your verdict must be unanimous.  This means that to return a verdict, all of you must agree to it.  Do not reach a decision by the flip of a coin or by any similar act.

On the third day of jury deliberations, the court received the following note from the jury foreman: "A juror is unwilling to deliberate and discuss all evidence.  Unwilling to budge one way or another.  [¶]  Stated twice mind is made up."

The court announced to counsel its recommendation to refer each juror to re-read CALCRIM No. 3550.  Defense counsel suggested that the court first question the jury foreperson, and the prosecutor agreed.

The jury foreperson, Juror No. 9, was then questioned.  Juror No. 9 indicated that the juror unwilling to further deliberate, Juror No. 8, had announced that morning and the prior afternoon that her mind was made up and nothing was going to change it.  Juror No. 9 also indicated that Juror No. 8 had been listening to the others' opinions but would simply say "this is what I believe" without saying anything more about the evidence.  Juror No. 9 further stated that Juror No. 8 had said that she thought she was following the court's instructions to not allow someone else to make you change your opinion.

After Juror No. 9 was excused from the courtroom, the parties agreed the court should bring in Juror No. 8 and question her.  Juror No. 8 entered the courtroom and acknowledged that she had announced her mind was made up.  When asked if she was unwilling to discuss the evidence, Juror No. 8 responded: "No.  That's not what—my understanding, and correct me if I'm wrong.  When you—after everybody was released from the jury, that you gave us the

5

instruction and you said that—I'm not going to quote you correctly, probably, but you said when you make up your mind, you can stick with that decision.  And that's what I meant."  She also indicated she now felt like she was experiencing animosity from the other jurors.  The court explained that it is the obligation of each juror to continue discussing and sharing with one another and asked if the juror could do that at this point in the process.  Juror No. 8 responded:

> I think what I was trying to express was that I was listening to everything and everything that was in discussion, and, you know, I felt like I was listening just like everybody else, so I'm not sure, because I'm feeling very—I'm just telling you honestly, I'm feeling kind of hostility a little bit.  Not from this courtroom.  I just want you to consider that because I don't want to be unfair.  I was listening to you and I tried to do the best I could, but I think they feel that I'm just not. . . .

When asked if she was willing to listen to the other jurors, to talk to them, and to discuss the evidence, Juror No. 8 answered, "yes."  She also answered in the affirmative when asked if she was "able to tell [the court] honestly that [she was] open at th[at] point to changing [her] position."  At that point, Juror No. 8 was excused from the courtroom.

The trial court reiterated its intent to have the jurors read CALCRIM No. 3550.  The prosecutor asked the court to tell the jurors that if anyone is not deliberating, this should be brought to the court's attention.  Defense counsel disagreed, asserting nothing more should be done to single out Juror No. 8, since "she already feels ostracized."  The court suggested stating, "if there are any further issues, including anyone's failure to comply with instruction 3550, please notify us in writing."  Both counsel agreed with the revised statement.

On August 20, 2009, the jury found Burlew guilty on all counts and found true all special allegations.  The court sentenced Burlew to an aggregate term of 18 years plus 115 years to life in state prison.

Through counsel, Burlew appealed his conviction, arguing that the trial court violated his rights to due process and a fair trial when it amended the charging document to enlarge the time period and substitute "genitalia" for "vagina"; his conviction of all sexual penetration counts violated his right to be free from *ex post facto* laws; and he was denied his right to a trial by a fair and impartial jury when the trial court coerced a holdout juror during deliberations. The Court of Appeal affirmed the judgment against Burlew in an unpublished, reasoned opinion issued on October 5, 2012. *Burlew*, 2012 WL 4748959, at *10. Burlew petitioned for review in the California Supreme Court, which was summarily denied on January 16, 2013.

Burlew timely filed a counseled Petition for a Writ of Habeas Corpus to this Court on December 30, 2013.

## II. GROUNDS/CLAIMS

In his counseled Petition, Burlew asserts the following three grounds for habeas relief. First, he argues that the late amendments to the charging document violated his rights to notice and due process. He next asserts that the trial court's supplemental jury charge referring them to re-read CALCRIM No. 3550 was unconstitutional jury coercion that violated his right to a trial by an impartial jury. Finally, Burlew argues that the cumulative effect of the errors deprived him of due process.

### III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding,"

§ 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that

contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that

are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives

at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1)

"refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the

relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon

the states; that is, the decision must be based upon constitutional grounds, not on the supervisory

power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where

holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it

cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"

*Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are

beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S.

Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was

correctly applied). It is a fundamental precept of dual federalism that the states possess primary

authority for defining and enforcing the criminal law.  *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court.  *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)).  "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding the judgment or rejecting the same claim rest upon the same ground."  *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).  Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

Claim 1.  Untimely Amendments to the Information

Burlew first argues that the trial court violated his rights to due process and a fair trial when, during trial, it amended by interlineation the even-numbered counts charging sexual penetration of the "vagina" to penetration of "genitalia" and enlarged the time period alleged.

The Court of Appeal rejected Burlew's contention that the trial court erred in granting prosecution leave to amend the information to charge penetration of the victim's genitalia rather than vagina, reasoning:

> [Burlew] here assented to future amendments of the information as part of his
> waiver of the preliminary hearing, so long as any such amendment is based on

information revealed in discovery.  Thus, [Burlew] was on notice that the nature of the charges against him could change, at least as to facts revealed in discovery.  And to the extent [Burlew] was aware he was charged with penetration of the vagina, he was obviously also aware he was charged with penetration of the genitalia.

What [Burlew] really complains about here is that he was deprived of a windfall that occurred when the prosecution ill-advisedly chose to charge him with penetration of the vagina rather than penetration of the genitalia.  The applicable code section does not require penetration of the vagina.  The defense consisted of [Burlew's] denial in the pretext call of any penetration whatsoever along with the medical testimony that the victim's examination was normal, i.e., consistent with no sexual penetration.

[Burlew] asserts the prosecution made an election to charge him with penetration of the vagina and so must live with that election.  However, what the prosecution did was not make an election but mistakenly charge more than was necessary for a conviction.  It would be as if the prosecution brought a charge of battery and alleged in the charging document that the defendant shot and killed the victim.  The fact the evidence later showed the victim did not die from the gunshot wound would not exonerate the defendant of the battery charge.

To sustain a conviction under section 288.7, subdivision (b), the prosecution was required to prove penetration only of the genitalia.  The fact the information alleged [Burlew] went even further and penetrated all the way to the victim's vagina does not mean he can be acquitted of the charge if it is later proven [Burlew] penetrated the victim's genitalia but did not reach her vagina.

[Burlew's] only possible due process argument here would not be based on the late change in the allegations but the fact the prosecution originally charged penetration of the vagina.  Conceivably, [Burlew's] due process rights might have been violated if the overcharge kept him from presenting a more effective defense to the ultimate charge.  However, [Burlew] presents no argument as to how his defense would have been different had the information charged penetration of the genitalia from the beginning.  Thus, his challenge to the amendment fails.

*Burlew*, 2012 WL 4748959, at *6.

The Court of Appeal similarly rejected Burlew's challenge to the time frame amendment:

[Burlew] contends the trial court erred in granting the prosecution's mid-trial motion to amend the information to expand the time frame of the offenses by four months.  He argues such amendment prejudiced him in two ways.  First, [Burlew] points out that in the pretext call he admitted inappropriately touching H.O. but denied penetrating her.  He also asserted the time frame for these acts "wasn't long at all."  [Burlew] argues the jury would be less likely to believe his denial of penetration if it disbelieved his claim that the offenses occurred over a period that "wasn't long at all."  [Burlew] further argues that, by permitting an increase in the time frame of the offenses, the court made it less likely the jury would believe his assertion that the offenses

occurred over a period of time that was not long and, hence, less likely the jury would believe his other assertion that he did not penetrate the victim.

Second, [Burlew] asserts his defense that there had been no penetration was partially based on the fact there was no physical evidence of penetration. Expert testimony established the physical examination of H.O. was either "normal" or "indeterminate." However, the experts also opined a molest victim could have a normal examination because either the penetration was slight, the genital area of the victim was sufficiently elastic to prevent injury, or the examination occurred a sufficient time after the molest to permit any injury to heal. [Burlew] argues expansion of the time frame for the offenses, thereby permitting the jury to conclude the offenses began four months earlier, meant the jury could also find the victim had four more months to heal, which would negate the significance of the "normal" examination.

Even ignoring the fact [Burlew] failed to raise either of these arguments in opposition to the People's motion to amend, his arguments are not well taken. The fact the time frame of the offenses was expanded did not negate that the offenses could have occurred over a relatively short period. The overall time frame of the offenses signifies only that the offenses occurred sometime during that period. However, all of the offenses could have occurred at the beginning of that period, at the end, or sometime in the middle. They need not have occurred throughout. Thus, the addition of four months did not necessarily mean the offenses spanned a longer period. It merely allowed for a finding that the span of the offenses, however long or short, may have begun earlier than originally thought. Furthermore, the basic premise of defendant's argument—that a reasonable jury could find a span of eight months not to be a long period but could not so find for a span of 12 months—is not sound.

As for any increase in the healing period, since [Burlew] did not raise this issue below, there is nothing in the record to support his basic premise that any finding by the jury that the molestations may have commenced earlier than January 1, 2007, would have impacted the results of the physical examination. Furthermore, there is nothing in this record to suggest [Burlew's] defense would have been any different had he been given notice of the expanded time frame from the start. Nor does [Burlew] argue on appeal that early notice would have changed the defense strategy. As noted above, [California Penal Code §] 1009 is intended to protect the defendant's right to due process. Due process requires adequate notice, so that a defendant may prepare for trial. Because there is nothing in this record to suggest the defense strategy would have been any different had [Burlew] received earlier notice of the expanded time frame for the offenses, [Burlew] was not prejudiced by the last-minute amendment.

*Id.* at *3-4.

The Sixth Amendment, which is applicable to the states through the Due Process Clause of the Fourteenth Amendment, guarantees a criminal defendant a fundamental right to be clearly informed of the nature and cause of the charges against him. *Calderon v. Prunty*, 59 F.3d 1005,

1009 (9th Cir. 1995); *see also* U.S. CONST. amend. VI ("In all criminal prosecutions, the accused

shall enjoy the right . . . to be informed of the nature and cause of the accusation . . . ."); *Jackson

v. Virginia*, 443 U.S. 307, 314 (1979) ("It is axiomatic that a conviction upon a charge not made

or upon a charge not tried constitutes a denial of due process.").  In order to determine whether a

defendant has received constitutionally adequate notice, the court looks first to the information.

*James v. Borg*, 24 F.3d 20, 24 (9th Cir. 1994). "The principal purpose of the information is to

provide the defendant with a description of the charges against him in sufficient detail to enable

him to prepare his defense."  *Id*.  An information is not constitutionally defective if it states "the

elements of an offense charged with sufficient clarity to apprise a defendant of what to defend

against."  *Id*. at 25 (quoting *Miller v. Stagner*, 757 F.2d 988, 994 (9th Cir. 1985)).

     As an initial matter, a trial court's decision to allow amendment of the information is

controlled by state law.  *See Atkins v. Herndon*, 380 F. App'x 726, 728 (9th Cir. 2010)[2]

(discussing allowing amendment under California law).  Under California law, it is well-settled

that the prosecution may file amended charges at any time prior to a verdict or the defendant

pleading guilty.  *See Jones v. Smith*, 231 F.3d 1227, 1238-39 (9th Cir. 2000, *as amended* Jan. 18,

2001) (citing CAL. PENAL CODE § 1009; FED. R. CRIM. P. 7(e)).  In this case, Burlew does not

challenge the adequacy of the amended Information, but instead complains that the challenged

amendments came so late in the proceedings that they violated his right to fair notice.  However,

the Supreme Court has not laid out with particularity the circumstances under which a motion to

amend an information at trial would amount to a constitutional violation.  Absent such precedent,

the state courts' ruling that no constitutional violation occurred could not have been an

---

[2]     Cited for persuasive value pursuant to Ninth Circuit Rule 36-3.

"unreasonable application" of clearly established Federal law. *Carey*, 549 U.S. at 77 (where Supreme Court precedent gives no clear answer to question presented "it cannot be said that the state court 'unreasonab[ly] appli[ed] clearly established Federal law'").

Moreover, Burlew cannot show that he was prejudiced by the timing of the amendments. With respect to his word substitution claim, Burlew claims that the interlineation amendment of the sexual penetration charges "lessened the proof needed to be shown by the People" and "prejudiced [his] ability to prepare for trial." But the indictment as charged explicitly referred to Penal Code § 288.7(b), which prohibits sexual penetration as defined in § 289, which in turn uses the term "genital[ia]" in its definition of sexual penetration. CAL. PENAL CODE §§ 288.7(b), 289(k)(1). Indeed, "the government's theory of slight penetration did not substantially alter the crimes charged in the information" which referred to the victim's vagina. *See Schiro v. Farwell*, 225 F. App'x 591, 593 (9th Cir. 2007)[3] (holding that government's evidence presented to the jury at trial that the sexual penetration of the minor child's genitalia was slight did not constitute a constructive amendment or substantial variance from information that charged sexual penetration in the victim's vagina) (citing *United States v. Hartz*, 458 F.3d 1011, 1021 (9th Cir. 2006) ("[W]e hold that the language in the indictment describing the .357 and the 9mm was surplusage, rather than an essential element of the crimes for which Hartz was charged, and that the difference between the indictment and the jury instructions was a variance that did not alter the behavior for which Hartz could be convicted."); *United States v. Garcia-Paz*, 282 F.3d 1212, 1217 (9th Cir. 2002) ("[18 U.S.C. § 545] prohibits smuggling of 'merchandise.' Whether that merchandise is illegal medicine or marijuana does not matter under the statute. Thus, the phrase

---

[3]        Cited for persuasive value pursuant to Ninth Circuit Rule 36-3.

[in the indictment] 'to wit, marijuana' is surplusage, and does not render the jury's conviction of Garcia-Paz . . . a violation of Garcia-Paz's Fifth Amendment rights." (internal citation omitted))).

Moreover, Burlew waived a preliminary hearing "with a stipulation that the People can amend to add any charges that have been provided in the discovery."  Burlew fails to demonstrate clear error with respect to the trial court's finding upon an independent review in conjunction with Burlew's motion for a new trial that the discovery records were "more than sufficient and certain[ly] for purposes of notice and charging" warranted the amendment.  *See* 28 U.S.C. § 2254(e)(1); *Miller-El*, 537 U.S. at 340.  Similarly, the Ninth Circuit has recognized that a defendant may receive constitutionally adequate notice of an underlying charge by means other than the charging document.  *See, e.g.*, *Morrison v. Estelle*, 981 F.2d 425, 427-49 (9th Cir. 1992) (noting that a defendant may receive adequate notice of charges during trial through presentation of evidence and jury instructions); *Calderon*, 59 F.3d at 1009 (holding that description of crime in opening argument adequately apprised defendant of the charges against him).

Burlew also fails to show that the interlineation amendment prejudiced his trial strategy. Burlew's defense at trial was a complete denial as to the penetration counts.  Defense counsel argued in opening statement that Burlew "denied adamantly that he did anything more than touch [the victim].  He comes clean as to what he did but denied that he penetrated her with his fingers and denied that he had intercourse with her."  Counsel further argued at trial that "the defense in this case has always been, from the beginning, even when [Burlew] spoke on the pretext call, was that there was absolutely no penetration at all.  None."  Therefore, his position

at trial was that he did not penetrate either the child's vagina or genitalia, which was equally applicable to the charges as amended.

Burlew nonetheless argues that his strategy at trial would have been different had he known of the ultimate charge at the beginning of trial. He argues that he would have spent more time cross-examining the victim and suggests the "possib[ility] that [he] may even have felt the need to take the stand." But Burlew provides no specifics as to what useful information may have been elicited on further cross-examination or how his potential testimony could have led to a different result. Thus, his bare contention is speculative and insufficient to warrant habeas relief. *See Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (granting habeas relief "on the basis of little more than speculation with slight support" is improper).

Burlew cannot show that he was prejudiced by the enlargement of the time period either. He argues that he was prejudiced because, "[b]y broadening the allegations at this late hour, the People deprived the defense of the opportunity to address the dates at issue at opening arguments, through direct and cross examination, and hampered the defense's closing arguments." But again, the amendment to change the dates of the alleged crimes did not add any new counts or charge any violations of new or different code sections. The amendment did not change the essential ingredients of the offenses charged: the perpetrator remained the same, the victim remained the same, and the conduct remained the same. Rather, it corrected an immaterial variance. Such an amendment does not run afoul of § 1009. As to his claim that earlier knowledge of the charges as amended would have changed his trial strategy, again, Burlew fails to provide any specific evidence in support of his claim and, notably, Burlew did not advance an alibi defense. Moreover, the record indicates that the prosecution initially moved

to alter the dates in the information after the victim and her mother testified, and Burlew did not

request "a reasonable postponement" pursuant to § 1009 to address the dates.

In sum, the state courts' conclusion that the challenged amendments did not violate

Burlew's rights to notice and due process was neither unreasonable nor contrary to federal law,

and Burlew is not entitled to relief on this claim.

Claim 2.  Instructional Error

Burlew next asserts that the trial court's instruction to the jury to re-read CALCRIM

No. 3550 was unconstitutional because it coerced Juror No. 8 to reach a verdict.

"Clearly established federal law provides that '[a]ny criminal defendant . . . being tried

by a jury is entitled to the uncoerced verdict of that body.'"  *Parker v. Small*, 665 F.3d 1143,

1147 (9th Cir. 2011) (quoting *Lowenfield v. Phelps*, 484 U.S. 231, 241 (1988)).  "A

supplemental jury charge to encourage a deadlocked jury to try to reach a verdict is not coercive

per se."  *Id.* at 1147.  When faced with a claim of jury coercion, a reviewing court must

"consider the supplemental charge given by the trial court in its context and under all the

circumstances."  *Lowenfield*, 484 U.S. at 237 (citation and internal quotation marks omitted).

The court may consider the form of the instruction, the length of time the jury deliberated after

receiving the instruction in relation to the total time of deliberation and any other indicia of

coerciveness.  *See United States v. Berger*, 473 F.3d 1080, 1090 (9th Cir. 2007).  The ultimate

question is "whether the trial judge's inquiry would be likely to coerce certain jurors into

relinquishing their views in favor of reaching a unanimous decision."  *Locks v. Sumner*, 703 F.2d

403, 406 (9th Cir. 1983).

16

Burlew contends that two factors indicate that the supplemental instruction actually influenced and coerced the jury.  First, he emphasizes the relatively short lapse of time between the instruction and the verdict.  He argues, "In this case, the decision was made within four hours of the rereading of the instruction.  After four days of deliberation preceding the instructions, the decision to convict was reached by early the next morning."  While the fact that a jury returns a verdict soon after receiving a supplemental instruction "suggests the possibility of coercion," *Lowenfield*, 484 U.S. at 240, this fact does not suggest coercion here because, as the state appellate court correctly found, "[t]here is nothing in this record to suggest the jury was ever hung during deliberations," *Burlew*, 2012 WL 4748959, at *9.  Importantly, the record does not indicate that the court polled the jury to determine whether it was deadlocked.[4]  As the Court of Appeal further noted, "[t]he fact one juror was refusing to deliberate does not mean there was any deadlock.  The court was simply being told one juror was not following the court's instructions."  *Id.*

Second, Burlew contends that defense counsel objected to the instruction and thus "it was clear to one on the spot that the additional instructions may have a coercive effect."  He argues that defense counsel's objection renders his case different from *Lowenfield*, where defense counsel's failure to object to the supplemental instruction "indicate[d] that the potential for coercion . . . was not apparent to one on the spot."  *Lowenfield*, 484 U.S. at 240 (footnote

---

[4]      Indeed, even if the court had conducted such an inquiry, no clearly established Supreme Court law holds that a court violates the constitution by inquiring into the numerical division of a supposedly deadlocked jury.  *See Bell v. Uribe*, 748 F.3d 857, 867 (9th Cir. 2014).  Although the United States Supreme Court in *Brasfield v. United States*, 272 U.S. 448, 449-50 (1926), disapproved the practice of polling deadlocked juries in federal prosecutions, this case invoked the Supreme Court's supervisory powers over the federal courts and did not implicate the Constitution, *see Bell*, 748 F.3d at 867.

omitted) (holding that supplemental instruction was not coercive although jury returned verdict sentencing petitioner to death for murder 30 minutes after receiving instruction).  But the record does not support Burlew's contention that defense objected to the instruction as given.  As the Court of Appeal also correctly found, "[Burlew] himself agreed to the procedure. . . . [Burlew] objected only to the court including in its directive to the jury its original proposal that if a juror is unwilling to deliberate, the court should be notified.  [Burlew] expressed concern that this would single out juror No. 8, and the court did not include that directive."  *Burlew*, 2012 WL 4748959, at *9.

Moreover, the record does not support Burlew's contention that the jury was coerced into reaching a verdict.  The court's supplemental instruction did not single out Juror No. 8 or any particular issue or evidence, but simply advised the jury of its duties to deliberate and suggested to all jurors in neutral terms possible methods of aiding the process of deliberation.  As the Court of Appeal further found:

> After obtaining the relevant information from juror No. 8 and juror No. 9, the court asked juror No. 8 if she was willing to resume deliberations, to discuss the evidence, to listen to the others, and to change her position if appropriate.  Juror No. 8 indicated she was willing to do so.  There was no indication at that point of a hung jury and no suggestion as to what position juror No. 8 had take on the evidence.  Thus, [Burlew's] claim that juror No. 8 was coerced into finding him guilty is pure speculation.

*Id.*

Again, federal habeas relief is unavailable for speculative claims.  *See Wood*, 516 U.S. at 8.  Indeed, federal habeas courts consistently have rejected challenges to similar instructions even under circumstances where, unlike here, the court knew the jury was deadlocked as well as the identity of the holdout juror.  *See Early*, 537 U.S. at 8-10 (under AEDPA standard of review, habeas relief unavailable even though judge knew the identity of the single holdout juror where

the judge gave a neutral supplemental instruction telling jurors that they were the sole judges of the facts, that they must accept the law as given in the instructions, and that they could not "make up" their own law); *Parker*, 665 F.3d at 1149 (California Court of Appeal was not unreasonable in rejecting challenge to supplemental instruction given after reported jury deadlock where, although judge knew there was one holdout juror favoring acquittal, judge did not address that juror's concerns in the supplemental instruction or attempt to recast the evidence in light favorable to the prosecution); *DeWeaver v. Runnels*, 556 F.3d 995, 1007-08 (9th Cir. 2009) (where jurors' disagreement appeared to concern interpretation of several instructions and court spoke with holdout juror concerning that juror's concerns, supplemental instruction including lengthy hypothetical illustrating legal concepts as to which jury had requested clarification was not coercive); *cf. Smith v. Curry*, 580 F.3d 1071, 1082-84 (9th Cir. 2009) (supplemental instruction coercive where judge pointed out evidence favorable to prosecution in response to the holdout juror's questions).  Accordingly, Burlew cannot prevail on his jury coercion claim.

<u>Claim 3.  Cumulative Error</u>

Finally, Burlew argues that "[t]he combination of errors that occurred after both sides rested so skewed the fairness of jury deliberations that they rendered the trial fundamentally unfair."

As an initial matter, Burlew failed to exhaust this claim.  This Court may not consider claims that have not been fairly presented to the state courts.  28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).  To be deemed exhausted, a claim must have been presented to the highest state court that may consider the issue presented.  *See*

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To have properly exhausted his state court remedies, Burlew must have presented both the legal arguments and the factual basis to the highest state court.  *See Peterson v. Lampert*, 319 F.3d 1153, 1155-56 (9th Cir. 2003).

Burlew did not raise this claim at all before the state courts.  Burlew appears to contend that he exhausted this claim by challenging each error separately before the California Supreme Court.  Although a claim may be deemed fairly presented for exhaustion purposes where a petitioner asserted a "sufficiently related" or "intertwined" claim in his state-court briefing—such that, by raising one claim, the petition clearly implies another error—that exception does not apply to cumulative-error claims.  *See Wooten v. Kirkland*, 540 F.3d 1019, 1025 (9th Cir. 2008) ("Briefing a number of isolated errors that turn out to be insufficient to warrant reversal does not automatically require the court to consider whether the cumulative effect of the alleged errors prejudiced the petitioner.").  Because he cannot return to state court to properly exhaust this claim, federal habeas review of this claim is procedurally barred.  *See id.*

In any event, even if Burlew had exhausted this claim, he would not be entitled to relief on it.  "While the combined effect of multiple errors may violate due process even when no single error amounts to a constitutional violation or requires reversal, habeas relief is warranted only where the errors infect a trial with unfairness."  *Peyton v. Cullen*, 658 F.3d 890, 896-97 (9th Cir. 2011) (citing *Chambers v. Mississippi*, 401 U.S. 284, 298, 302-03 (1973)).  Such "infection" occurs where the combined effect of the errors had a "substantial and injurious effect or influence  in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (citation omitted).  In other words, where the combined effect of individually harmless errors renders a criminal defense "far less persuasive than it might [otherwise] have been," the resulting

conviction violates due process.  *See Chambers*, 401 U.S. at 294.  As discussed above, however, Burlew does not allege any claims that amount to error, and thus he demonstrates no errors that can accumulate to a level of a constitutional violation.  *See Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002).  Burlew is therefore not entitled to relief on his cumulative error claim.

V. CONCLUSION AND ORDER

Burlew is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: November 26, 2014.

/s/James K. Singleton, Jr.<br>JAMES K. SINGLETON, JR.<br>Senior United States District Judge